**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MICHAEL DONOVAN, | Case No.: |
| Plaintiff, | |
| v. | **COMPLAINT** |
| CASTLE BRANDS, INC., MARK E. ANDREWS, JOHN F. BEAUDETTER, HENRY C. BEINSTEIN, DR. PHILLIP FROST, DR. RICHARD M. KRASNO, RICHARD J. LAMPEN, STEVEN D. RUBIN and MARK ZEITCHICK, | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff Michael Donovan ("Plaintiff"), by his attorneys, files this action against the defendants, and alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

**PARTIES**

1.      Plaintiff is a citizen of the Commonwealth of Pennsylvania. He is, and at all times relevant hereto, has been a common shareholder of Castle Brands, Inc. ("Castle Brands").

2.      Defendant Castle Brands, together with its subsidiaries, imports, sells, develops, and markets alcoholic and non-alcoholic beverage products in the United States, Asia, Europe and Canada. The Company's principal place of business is 122 East 42nd Street, New York, New York. It is incorporated in the state of Florida. Castle Brands common stock is publicly traded on the NYSE under the ticker symbol "ROX."

3.      Defendant Mark Andrews, III ("Andrews") has been a member of the Castle Brands Board of Directors at all relevant times. He founded Great Spirits Company LLC, a predecessor

company, in 1998 and served as its chairman of the board, president and chief executive officer from inception until December 2003.  Andrews has served as chairman of the board of the Company since December 2003 and served as president from December 2003 until November 2005. He also served as chief executive officer of the Company from December 2003 until November 2008. Andrews owns over 4.9 million shares of the Company's stock, approximately 3% of all outstanding shares. Andrews also has an employment agreement with the Company.

4.      Defendant John F. Beaudette ("Beaudette") has been a member of the Castle Brands Board of Directors since 2004.

5.      Defendant Henry C. Beinstein ("Beinstein") has been a member of the Castle Brands Board of Directors since 2009.

6.      Defendant Phillip Frost ("Frost") has been a member of the Castle Brands Board of Directors since 2008. He, along with related entities, is the largest shareholder of the Company. As of September 9, 2019, Frost and his related entities hold over 54 million shares, representing approximately 30% of the outstanding shares.

7.      Defendant Richard M. Krasno ("Krasno") has been a member of the Castle Brands Board of Directors since 2015.

8.      Defendant Richard J. Lampen ("Lampen") has been a member of the Castle Brands Board of Directors, as well as President and Chief Executive Officer since 2008. As of September 9, 2019, Lampen holds over 3.8 million shares of Company stock.

9.      Defendant Steven D. Rubin ("Rubin") has been a member of the Castle Brands Board of Directors since 2009.

10.     Defendant Mark Zeitchick ("Zeitchick") has been a member of the Castle Brands Board of Directors since  2014.

2

11.     Defendants identified in ¶¶ 2-10 are collectively referred to as the "Individual Defendants."

12.     Non-Party Austin, Nichols & Co., Inc. ("Austin") is a Delaware corporation and a party to the Merger Agreement.

13.     Non-Party Pernod Ricard S.A. ("Pernod") is a French Corporation.

14.     Non-Party Rook Merger Sub, Inc. ("Merger Sub") is a Florida Corporation formed for the purpose of effectuating the Merger Agreement.

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

16.     Personal jurisdiction exists over each Defendant either because each Defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each Defendant by this Court permissible under traditional notions of fair play and substantial justice.

17.     Venue is proper in this District under 28 U.S.C. § 1391, because, among other things: (a) the conduct at issue will have an effect in this District; (b) a substantial portion of the transactions and wrongs complained of herein, occurred in this District; and (c) certain Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.  Additionally, the Company's principal place of business in in this District.

## FACTS

18.     A tender offer ("Tender Offer") has been commenced by which Austin, an affiliate of Pernod, and Merger Sub (collectively "Pernod"), will acquire each outstanding share of Castle Brands common stock for $1.27 per share in cash (the "Proposed Transaction").

19.     The terms of the Proposed Transaction were memorialized on or about August 29, 2019 when a Form 8-K was filed with the Securities and Exchange Commission ("SEC") attaching the Agreement and Plan of Merger (the "Merger Agreement") as an exhibit.

20.     On or about September 11, 2019, Castle Brands filed a Solicitation/Recommendation Statement on Schedule 14D-9 (the "Proxy") with the SEC in support of the Proposed Transaction.  The Proxy is materially deficient and fails to provide Castle Brands shareholders the material information that they need to know in order to make an informed decision whether to tender their shares or not.

21.     Prior to the issuance of the Proxy, on August 28, 2019, Castle Brands and Pernod issued a press release announcing that Castle Brands had agreed to be acquired by Pernod in the Proposed Transaction. The press release states in relevant part:

> PARIS and NEW YORK – August 28, 2019 – Pernod Ricard (Euronext Ticker RI; ISIN Code: FR0000120693) and Castle Brands Inc. (NYSE American: ROX), today announced that they have entered into a definitive agreement under which Pernod Ricard, through a subsidiary, will acquire all of the outstanding common stock of Castle Brands for $1.27 per share in cash, or approximately $223 million, plus the assumption of debt, through a cash tender offer followed by a merger.
>
> Under the terms of the merger agreement, which has been unanimously approved by the Castle Brands Board of Directors, Castle Brands shareholders will receive $1.27 in cash for each outstanding share of Castle Brands common stock they own, representing a 92% premium to Castle Brands' closing share price on August 27, 2019, and a 109% premium to the 30-day volume weighted average share price through such date.
>
> Alexandre Ricard, Chairman and Chief Executive Officer of Pernod Ricard, stated, "Through this acquisition we welcome this great brand portfolio, in particular, Jefferson's bourbon whiskey, to the Pernod Ricard family. Bourbon is a key category in the US which is our single most important market. This deal aligns well with our consumer-centric strategy to offer our consumers the broadest line-up of high-quality premium brands. As with our American whiskies Smooth Ambler, Rabbit Hole and TX, we would provide Jefferson's a strong route to

market and secure its long-term development, while remaining true to its authentic and innovative character."

"We are very pleased to reach an agreement with Pernod Ricard, which is the result of months of planning and deliberation by our Board of Directors," said Richard J. Lampen, President and Chief Executive Officer of Castle Brands. "We are confident that this transaction, upon closing, will deliver immediate and substantial cash value to our shareholders."

The merger agreement provides for a cash tender offer to acquire all outstanding shares of Castle Brands to be launched shortly. The closing of the tender offer will be subject to certain conditions, including the tender of shares representing at least a majority of Castle Brands' outstanding shares, early termination or expiration of the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act, and other customary conditions. Once the tender offer is successfully completed, Pernod Ricard will acquire all shares not acquired in the tender offer through a second-step merger in which the holders of the outstanding shares of Castle Brands common stock not tendered in the offer will receive the same per share price paid in the tender offer, in cash. The transaction is expected to close in the fourth quarter of 2019.

BofA Merrill Lynch acted as financial advisor to Pernod Ricard and Debevoise & Plimpton LLP acted as its legal advisor. Perella Weinberg Partners and Houlihan Lokey acted as financial advisors to Castle Brands, Holland & Knight LLP acted as Castle Brands' legal advisor, and Sullivan & Cromwell LLP acted as legal advisor to Castle Brands' financial advisors.

22.     Two financial advisors were retained to provide opinions as to financial metrics of the Proposed Transaction. The first is Perella Weinberg Partners LP ("Perella") and Houlihan Lokey Capital, Inc. (Houlihan").

23.     The consideration being offered in the tender offer is inadequate given the Company's growth prospects and according to the expectations of the financial analysts who follow the Company.

24.     The Proposed Transaction is also tainted by the self-interest of the Individual Defendants.

25.     Various employment agreements with several Castle Brands officers and directors entitled them to severance packages should their employment be terminated under certain circumstances. The financial compensation to be provided pursuant to these employment agreements is substantial and will bestow upon each director and officer entitled to them hundreds

of thousands of dollars of financial compensation not shared by Castle Brands' common stockholders.

26.     The following table sets forth the compensation for certain Castle Brands directors and officers:

Compensation

| Executive Officer | Severance Payment ($) | Value of Health Benefits ($) | Benefit of Acceleration for Vesting of Stock Options and Restricted Stock Awards ($) | Total($) |
|---|---|---|---|---|
| Richard J. Lampen | 515,000 | — | 55,500 | 570,500 |
| Alfred J. Small | 815,474 | 62,928 | 275,675 | 1,154,077 |
| John S. Glover | 1,020,608 | 44,160 | 401,538 | 1,466,306 |
| T. Kelley Spillane | 886,796 | 62,928 | 275,675 | 1,225,399 |
| Alejandra Peña | 298,850 | 26,448 | 230,038 | 555,336 |

27.     Thus, while the Proposed Transaction is not in the best interests of Castle Brands' shareholders, it will produce lucrative benefits for the Company's officers and directors.

28.     A review of the financial analyses of Perella and Houlihan set forth in the Proxy reveals that each used various analyses, including Public Company, Precedent Transactions, Sum-of-the-Parts ("SOP"), and Discounted Cash Flow ("DCF").  Projections for fiscal years 2020-2022 are provided in the Proxy.  The disclosures in the Proxy are deficient and fail to provide the necessary material information to allow shareholders to make an informed decision whether to tender their shares for several reasons.

29.     First, Perella performed a SOP analysis.  Perella calculates implied value for each of the brands using a multiple to LTM "CAMP" as of 6/30/2019.  CAMP is akin to Gross Profit (i.e. Sales – Cost of Goods Sold) but also excludes direct selling and marketing expenses.  It provides LTM CAMP numbers for each of Jefferson's, Goslings Rum, Goslings Ginger Beer, Irish Whiskies, and Other Brands. It also shows a range of multiples it applied.

30.     There is, however, no discussion in the Proxy of how the CAMP multiples are derived – the text of the Proxy states "assumed CAMP multiple."  It is unclear whether Perella is referencing the CAMP multiples it has observed for other brands or applying different multiples. This ambiguity must be clarified in order to give context to the multiples Perella is using in its financial analysis of the Proposed Transaction and to make the Proxy not materially misleading.

31.     Second, both financial advisors derive equity values from enterprise values by subtracting debt, adding cash and subtracting the 19.9% stake in Goslings-Castle Partners Inc. ("GCP") the Company does not own.  Both advisors say that management advised them that the value of GCP is that which was implied by the purchase price it paid in March 2017 when it bought an additional 20.1% stake in GCP.

32.     Upon information and belief, Castle Brands paid $22.5 million for a 20.1% stake, making the value in total for GCP of approximately $111.7 million, thus implying a $22.2 million value for the 19.9% stake in GCP that the Company does not own.  This information, however, is not disclosed in the Proxy. To make the Proxy not materially misleading this information should be disclosed as it is a material amount in the context of the $1.27 per share proposed tender offer price.

33.     Third, the net operating loss ("NOL") disclosures in the Proxy are also deficient. This is important because the NOLs get added to the valuation analysis of the total worth of Castle Brands. In the Proxy, Perella represents that the present value of the NOLs, which gets added to valuation, is $6 million.  However, the Proxy fails to disclose how this $6 million valuation of the NOLs was derived.  Moreover, in the Company's June 2017 fourth quarter press release, management of Castle Brands stated the its NOLs had a value of $9.6 million.  The Proxy fails to

show any reconciliation of these two conflicting valuations of the NOLs.  That conflict should be explained in order to not make the Proxy materially misleading.

34.     In sum, the omission of the above-referenced information renders the Proxy materially incomplete and misleading, in contravention of the Exchange Act.  Unless the foregoing material information is disclosed prior to the upcoming stockholder vote, Plaintiff will be unable to make an informed decision regarding whether to vote his shares in favor of the Proposed Transaction, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

35.     Accordingly, the Individual Defendants, in connection with the Proposed Transaction, violated their fiduciary duties of due care, good faith and loyalty owed to Castle Brands, Plaintiff and the other Castle Brands shareholders of Castle Brands.

36.     As a result of the Individual Defendants' breach of their fiduciary duties, Plaintiff and the other Castle Brands shareholders will not receive fair value in the Proposed Transaction for their Castle Brands common stock.

**COUNT I**

**(AGAINST ALL DEFENDANTS FOR VIOLATIONS OF SECTION 14(a) OF THE EXCHANGE ACT AND RULE 14a-9 PROMULGATED THEREUNDER**

37.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

38.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or

8

authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

39.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with shareholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

40.     Defendants have issued the Proxy with the intention of soliciting support of stockholders for the Proposed Transaction.  Each Defendant reviewed and authorized the dissemination of the Proxy, which fails to provide critical information detailed above.

41.     In so doing, Defendants made untrue statements of material fact and/or omitted material facts necessary to make the statements made not misleading. Each Defendant, by virtue of their roles as officers and/or directors, were aware of the omitted material information but failed to disclose such information, in violation of Section 14(a).  Defendants therefore had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

42.     The Proxy is materially misleading and omits material facts that are necessary to render it not misleading. Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

43.     Defendants knew or should have known that the material information identified

9

above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.  Indeed, Defendants were required to be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

44.    Defendants violated securities laws in preparing and reviewing the Proxy. Defendants chose to omit material information from the Proxy or failed to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully.

45.    The misrepresentations and omissions in the Proxy are material to Plaintiff and the Company's other stockholders, each of whom will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

46.    Plaintiff and the Company's other shareholders have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Company's other shareholders be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**COUNT II**
**(AGAINST THE INDIVIDUAL DEFENDANTS FOR VIOLATIONS OF**
**SECTION 20(a) OF THE EXCHANGE ACT)**

47.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

48.    The Individual Defendants acted as controlling persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of the Company, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in

the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

49.     Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

50.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein and exercised the same. The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in preparing this document.

51.     In addition, as set forth in the Proxy sets forth at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

52.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

53.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by

11

their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

54.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Company's other shareholder be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

(A)     declaring that the Proxy is materially false and/or misleading;

(B)     enjoining, preliminarily and permanently, the Proposed Transaction until the Proxy is cured;

(C)     in the event that the transaction is consummated before the entry of this Court's final judgment, rescinding it or awarding Plaintiff rescissory damages;

(D)     directing that Defendants account to Plaintiff for all damages caused by them and account for all profits and any special benefits obtained as a result of their breaches of their fiduciary duties.

(E)     awarding Plaintiff the costs of this action, including a reasonable allowance for the fees and expenses of Plaintiff's attorneys and experts; and

(F)     granting Plaintiff such further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

Dated: September 17, 2019

GAINEY McKENNA & EGLESTON

*s/ Thomas J. McKenna*
Thomas J. McKenna
Gregory M. Egleston
440 Park Avenue South
New York, NY 10016
Telephone: (212) 983-1300
Facsimile: (212) 983-0383
Email: tjmckenna@gme-law.com
Email: gegleston@gme-law.com

*Attorneys for Plaintiff*